IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT of GEORGIA

STATE OF GEORGIA

FILED
U.S. DISTRICT COURT
SAVANNAH DIV.

2025 JUN -3 A 10: 09

CLERK_____
SO. DIST. OF GA.

| | | |
|---|---|---|
| Rafael Garza IV, | ) | |
| Plaintiff | ) | CIVIL ACTION |
| vs. | ) | FILE NO. 4:25-cv-131 |
| CORY MICHAEL BARELLA, | ) | PLAINTIFFS' COMPLAINT |
| MICHAEL LANIER, | ) | FOR DAMAGES and DEMAND |
| GAVIN S. BALLARD, | ) | FOR JURY TRIAL |
| NATHANIEL BRINSON, | ) | |
| Defendants, | ) | |

### PLAINTIFF's COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL

COMES NOW, a living man, Rafael Garza IV, and files this *Complaint* against Defendants, CORY MICHAEL BARELLA, MICHAEL LANIER, GAVIN S. BALLARD, NATHANIEL BRINSON collectively referred to as "Defendants," and alleges upon the information and belief of the following:

### I. INTRODUCTION

1. Rafael Garza IV (a living man) would like to mention that he has studied for an unbelievable number of hours (in an attempt) to demonstrate the kindest, honorability, nobility, and an educated and read man. Rafael Garza IV is not belligerent and arrives with his hat in his hand (in an effort) to learn, grow, and achieve the best possible result for all parties. Moreover, Rafael Garza IV recognizes he is not a law scholar or has much experience with the typical "pro se' litigant," or "Sui Juris," and he understands the frustrations and exhaustions of the court. Similarly, Rafael Garza IV asks, with full transparency, to please not label him in the same category as some have exhibited in the courts.
2. Rafael Garza IV is extremely delighted regarding the procedure of law and has an exceedingly veneration towards the work of the court, and, the amazing efforts of all who have contributed to our incredible judicial system.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action and all courts under 28 U.S.C §1331 &amp; 28 U.S.C. §1332.
4. Venue in this district is proper under 28 U.S.C. §1391 because the events giving rise to this claim originated in this district.
5. Joiner in this district is proper as to all Defendants under Rule 20(A) of the Federal Rules of Civil Procedure as (1) the claims against the Defendants arise out of the same transaction, occurrence, or series of transactions or occurrences, and 2(B) there is a question of law or fact common to all Defendants.

$5 Fee paid, Rcpt # 40000 2386
Summons Issued

6. Through the power of being a State national and the nationality of the State called "GEORGIA" on Rafael Garza IV, after birth, and by any means whatsoever. This satisfies the jurisdiction requirements of the court.

### III.   PARTIES

7. Plaintiff and his property in Richmond Hill unincorporated, within Bryan County, in Georgia State, located in this district.

8. Defendants CORY MICHAEL BARELLA MICHAEL LANIER, GAVIN S. BALLARD, and NATHANIEL BRINSON is employed through the Pooler Police Department, a foreign For-Profit Cooperation with its principal place of business located at Pooler City Hall, 100 US-80, Pooler, GA, 31322, and which conducts business in Georgia State. MICHAEL LANIER, GAVIN S. BALLARD, and NATHANIEL BRINSON may be served with process at Pooler City Hall, 100 US-80, Pooler, GA, 31322. Whereas, CORY MICHAEL BARELLA may be served with process at 331 Labrador Lane, Guyton, Georgia.

9. Defendants CORY MICHAEL BARELLA, MICHAEL LANIER, GAVIN S. BALLARD, and NATHANIEL BRINSON for the Pooler Police Department in Georgia State, with its principal place of business located at 133 Montgomery Street, Ste. 600, Savannah, GA, 31401.

### IV.   GENERAL FACTUAL ALLEGATIONS

10. On the 25th of February 2024, at approximately 16:30hrs, in the eastbound direction of Pooler Parkway in Pooler, Georgia, I was stopped by the officer (Officer Cpl. Barella, Badge 621). Officer (Officer Cpl. Barella, Badge 621) turned on his emergency lights, and I pulled to the side of the road (my vehicle as partially on the road as I was making room for the Officer to pursue the said emergency).

    a. According to Georgia State Statue 40-6-6, an officer can only use their emergency lights "when responding to an emergent call or pursuing a suspect." Nowhere in the statute does it allow for emergency lights to be used to stop travelers as they are moving about the state, not committing crimes, or about to commit a crime. The officer stated there was no articulable probable cause to warrant the disruption of my daily activities.

11. Officer (Officer Cpl. Barella, Badge 621) approached the passenger side of my automobile, and I lowered my passenger side window approximately 1/3 of the way. Office (Officer Cpl. Barella, Badge 621) asked for my license. I asked Officer (Officer Cpl. Barella, Badge 621), "What was the reason for pulling me over?" (Officer Cpl. Barella, Badge 621) said that he would inform me of the nature of the stop when I handed over my driver's license.

    a. Officer took an oath to protect and defend the constitution of the United States of America. Requiring my personal property without identifying a crime or the nature and cause of the action is a gross violation of my 4th amendment right: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

    b. Whereas, pursuant to the Supreme Court Case, Barnes v. Felix (15 May 2025), Justice Kavanaugh concurred in whole or in part stating, "…the judiciary still must assess any resulting Fourth Amendment claim under the standard of objective reasonableness. Under this Court's precedents, that inquiry involves "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Graham, 490 U. S., at 396 (quoting Tennessee v. Garner, 471 U. S. 1, 8 (1985)).

    c. Furthermore, Justice Kagan in delivering the opinion of the Supreme Court stated approving of the Writ of Certiorari (to be more fully informed) regarding the lower Courts decision on said case, Barnes v. Felix (15 May 2025) on the "totality of the circumstances." Id., at 396 (quoting Tennessee v. Garner, 471 U. S. 1, 9 (1985)).

    d. Whereas, (the Supreme Courts opinion) states, "We granted certiorari to address whether, in resolving Fourth Amendment excessive-force claims, courts may apply the moment-of-threat rule just described. See 603 U. S. ___ (2024). We hold they may not because that rule constricts the proper inquiry into the "totality of the circumstances."

    e. Whereas, pursuant to case law such as *Kizee v. Conway* and the Supreme Court of Virginia where taxi drivers reapplied for permits/ licenses "for-hire", EGGLESTON, J., delivered the opinion of the court In *Taylor v. Smith,* 140 Va. 217, 234, 124 S.E. 259, we said:

> "The right to use the streets of a city as a common carrier for hire is a privilege and not an inherent right, and may be granted or refused by the city, in the exercise of

> its police powers, at its pleasure. This principle we reaffirmed in Long's Baggage Transfer Co. v. Burford, 144 Va. 339, 344, 132 S.E. 355. 85 S.E. 781, 782, L. R. A 1915F, 840; 37 Am. Jur., Motor Transportation, see 22, p. 535.

    f. Therefore, one for hire (if approved by the city) must have a permit and a license to exercise one's privilege.

    g. Conversely, the right to travel is inherently separate when it comes to having a permit/ license for hire, which indeed, the former is a right for all regarding Ex parte Dickey, supra (85. S.E., at page 782):

> "Distinguishes the radical difference between the right of a citizen to travel upon the highway and Transport his property thereon, in the ordinary course of life and business, and that of one who makes the highway his place of business and uses it for private gain in the operation of a motor vehicle. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all authorities."

    h. Furthermore, "This reasoning and distinction we recognized and approved in Taylor v. Smith, supra (140 Va., at pages 236, 237); Long's Baggage Transfer Co. v. Burford, supra (144 Va., at pages 344, 345); Thompson v. Smith, 155 Va. 367, 377, 154 S.E. 579, 71 A. L. R. 604.

    i. Moreover, the opinion of the court given by EGGLESTON, J., goes on the state:

> "And as we have already seen, the latter principle applies to the issuance of licenses by a municipality for the right to operate a for-hire vehicle over its streets" (Ex parte Dickey, supra; Taylor v. Smith, supra; Long's Baggage Transfer Co. v. Buford, supra).

12. Then Officer (Cpl. Barella, Badge 621) instructed me to get out, and my response was no, as I would have been subjected to unsafe measures (vehicles passing by) while my car was not pulled off the road of Pooler Parkway.

    a. The sworn officer violated my 5th Amendment right by not informing me of the alleged crime, thus subverting my due process rights.

b. Plaintiff continues to argue In *Corpus Juris Secundum*, Vol. 6A, under the subject of "Arrest," and under the heading of "Arrest or Detention Without Warrant" § 10, p. 17, it is written: At common law, however, it has always been the rule that, except in cases where (the) public security has demanded it, arrest without a warrant is deemed (to be) unlawful.

c. Sheriffs, constables, and other officers under the executive branch of government have always been recognized as having the authority to arrest for felonies committed and for misdemeanors amounting to a breach of peace. But this is the extent of their power to arrest without a warrant, and this constitutional principle is well-grounded in ancient common law safeguards of individual liberty:

> In England, under the common law, sheriffs, justices of the peace, coroners, constables, and watchmen were entrusted with special powers as conservators of the peace, with authority to arrest felons and persons reasonably suspected of being felons. * * * Conservators of the peace also had the authority to make arrests without warrants in case of a misdemeanor that involved a breach of the peace committed in the presence of the officer making the arrest (2 *Ruling Case Law*, p. 446; *Orick v. State*, 105 So. 465, 469 (Miss., 1925); *Grahm v. Stare*, 143 Ga. 440, 85 S.E. 328, 330 (1915); *Kennedy v. Siore*, 139 Miss. 579, 104 So. 449, 450 (1925); *Wilson v. Town of Mooresville*, 222 N.C. 283, 22 S.W.2d 907, 911 (1942); *People v. McGurn*, 341 Ill. 632, 173 N.E. 754, 756 (1930)).

d. It has been held that constitutional (provisions of rights) are to be interpreted according to "the common and statute law of England (prior) to the emigration of our ancestors," and by the law established here before the Constitution was adopted. "Under the common law, the powers of state agents were limited and the requirements for an arrest warrant was strictly enforced" (*United States v. Tarlowski*, 305 F. Supp. 112, 116 (1969)). This procedure for arrest is part of the "due process of law" provision of the constitution which protects citizens from the arbitrary infringement of their right to personal liberty. Thus, any specific (authority for arrests) must be based upon the common law procedures that allow a deprivation of one's liberty. This was so held by the Supreme Court of Michigan as follows:

> It has already been decided that no arrest can be lawfully made without a warrant, except in the cases existing at common law before our constitution was adopted (*People v. Swift*, 59 Mich. 529, 26 N.W. 694, 698 (1886)).

e. Since liberty cannot be deprived except by the law of the land, or due process of law, no statute or ordinance can constitutionally be enacted (which allows) arrests without a warrant for any purpose the legislature decides. Due process is a limitation upon the legislature, and thus a legislative statute cannot be the due process by which one can be deprived of one's liberty by arrests.

13. I then asked the officer (Officer Cpl. Barella, Badge 621) if I was being detained or arrested. Officer (Officer Cpl. Barella, Badge 621) said I was being detained and gave a lengthy and frustrating response. At this time, I handed over my license under threat/duress/coercion. Officer (Officer Cpl. Barella, Badge 621) responded that he would return with my license.

a. The officer has now violated both my 4th, 5th, and 6th amendment rights by forcing me to provide a license (which is not required to travel in my private property according to Supreme Court cases *Thompson v. Smith*, 154 SE 579, 11 American Jurisprudence, Constitutional Law, section 329, page 1135; *Thompson vs. Smith*, supra.; *Teche Lines vs. Danforth*, Miss., 12 S.2d 784"…the right of the citizen to drive on a public street with freedom from police interference…is a fundamental constitutional right" and *Indiana Springs Co. v. Brown*, 165 Ind. 465, 468 U.S. Supreme Court)

Page **4** of **18** – Plaintiff's Complaint for Damages and Demand for Jury Trial

without expressing a clear and articulable crime that was committed. The officer did not inform me of the nature and cause of the crime. I was never provided a sworn complaint.

b. Officer Cpl. Barella acted under the Color of Law, "The appearance or semblance, without the substance, of a legal right. The term usu. implies a misuse of power made possible because the wrongdoer is clothed with the authority of the state" [Black's Law Dictionary 11 Edition]. Similarly, the "State action is synonymous with color of [state] law in the context of federal civil-rights statutes or criminal law" [Black's Law Dictionary 11 Edition]."

c. Moreover, Black's Law Dictionary defines State-Action (1893) as, "Anything done by a government; esp., in constitutional law, an intrusion on a person's rights (esp. civil rights) either by a governmental entity or by a private requirement that can be enforced by governmental action..."

d. Therefore, when Officer Cpl. Barella stated on his POOLER PD INCIDENT REPORT (Public copy) with the following Code incident types: Code 40-5-29B – LICENSE TO BE EXAMINED ON DEMAND, Code 16-10-24 - OBSTRUCTING LAW ENFORCEMENT OFFICERS, and finally, Code 40-6-121 – IMPROPER U-TURN, these Codes [Under the Color of Law] appear to have merit. However, Plaintiff argues the following:

> Regarding Statutes, Codes, Regulations, and the like, Chief Justice John Marshall delivered the dissenting opinion of the Supreme Court in Marbury v. Madison that "...all those who have framed written Constitutions contemplate them as forming the fundamental and paramount law of the nation, and consequently the theory of every such government must be that an act of the Legislature repugnant to the Constitution is void" Marbury v. Madison, 5 U.S. 137 (1803).

e. Furthermore, "This theory is essentially attached to a written Constitution, and is consequently to be considered by this Court as one of the fundamental principles of our society. It is not, therefore, to be lost sight of in the further consideration of this subject" Marbury v. Madison, 5 U.S. 137 (1803).

f. Similarly, Chief Justice John Marshall further expounded:

> "If an act of the Legislature repugnant to the Constitution is void, does it, notwithstanding its invalidity, bind the Courts and oblige them to give it effect? Or, in other words, though it be not law, does it constitute a rule as operative as if it was a law? This would be to overthrow in fact what was established in theory, and would seem, at first view, an absurdity too gross to be insisted on. It shall, however, receive a more attentive consideration" Marbury v. Madison, 5 U.S. 137 (1803).

g. Therefore, "It is emphatically the province and duty of the Judicial Department to say what the law is. Those who apply the rule to particular cases must, of necessity, expound and interpret that rule. If two laws conflict with each other, the Courts must decide on the operation of each" Marbury v. Madison, 5 U.S. 137 (1803).

h. Whereas, pursuant to *Marbury v. Madison,* Plaintiff attempted to denote in earlier documents the importance of laws contrary to the U.S. of America's Constitution must have Judicial oversight. Again, Plaintiff lacks the legal prowess and is an ordinary layman and attempts to depict the importance of Plaintiffs' civil lawsuit against Defendants regarding Plaintiffs' understanding of good law, depicted in Plaintiffs' Affidavit of Facts/Truth.

14. By this time, another officer, who appeared to be finishing up a separate traffic stop ahead of me, reversed their patrol car towards my location, coming within inches of my automobile. I even had to sound my horn to alert the officer of the danger. At this time, more Pooler Police officers (Officer Ballard, Badge 670, and Officer Brinson, Badge 647) had arrived (at the scene) and demanded that I get out of my automobile. This prompted me to ask, "What is going on?" (I did not get any response from the Officers).

    a. Officers continued to violate my 4th amendment right to be secure in my property.

    b. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

    c. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

    d. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

15. At this time, the officer (Officer Cpl. Barella, Badge 621) pushed my driver-side window down and proceeded to unlock my automobiles front left door (Officer Barella standing outside of my automobile and forced my window down, reached inside of my automobile to forcibly unlock my door with force of entry).

    a. Again, the officer violated my 4th, 5th, and 6th amendment rights

    b. The officer failed to articulate the reasonable probable cause he had to push my window down on my private automobile, thus, he required a warrant signed by a Judge with an Affidavit of Truth/ proof of claim to establish probable cause and the nature of the alleged crime to excuse his conduct against my person, papers, and effects. Furthermore, this act, committed by Officer Barrell is contrary to the 4th amendment. Whereas, the 4th amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

    c. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

    d. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

    e. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

16. Once Officer (Officer Cpl. Barella, Badge 621) opened my door, I informed him that I was concealed carrying and had my side-arm/pistol and two additional magazines on me, all while my hands were up in the air. I continued to ask what was happening and stated that my son was in the automobile.

    a. 4th amendment violation (entered my private vehicle without a signed Warrant from a Judge) "...probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." Again, my person, papers, and effects (at this point) were violated, and my 4th amendment was trampled upon.

    b. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

    c. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

    d. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

17. During this time, another officer (who did not identify himself to me) forced himself into my automobile from the rear driver-side door and proceeded to reach at me from behind my seat with his arm to what I believe was to subdue me. (However, the officer withdrew the initial attempt, as I witnessed this with my rearview mirror.)

    a. 4th, 5th, and 6th Amendment violation

    b. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

    c. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

    d. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

18. I then informed the officers that I would get out of my truck and was not resisting arrest, but the other officers on the scene proceeded to throw me down onto the road (after I willfully got out of my private vehicle) on the traffic side of Pooler Parkway.

    a. 8th Amendment violation: cruel and unusual punishment.

    b. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

    c. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

    d. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

19. These officers (whose identities I do not have) then jumped onto my back using excessive force and placed handcuffs on my wrists. I notified the officers that I was a disabled vet with back issues (denoted on my handicap license plate).

    a. 8th Amendment violation

    b. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

    c. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

    d. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

20. I (once) again explained to the officers that I still did not understand what was happening. I also had to remind them that they had not yet removed my sidearm, and I was becoming more concerned for my safety. The officers attempted to persuade me to stand up, but I could not stand up without assistance as I was in a lot of pain.

    a. 8th Amendment violation: cruel and unusual punishment.

    b. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

    c. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

    d. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

21. At this point, I was instructed to get into the back of one of the officer's patrol cars. I asked if they were even going to read me my rights. The officer said they did not have to read my rights to me. Shortly after, the SGT officer arrived (on the scene) and asked me what happened.

    a. Arizona, 384 U.S. 436 (1966) states that law enforcement MUST warn a person of their constitutional rights before they are arrested and charged. Miranda's warning was not provided. I was never Mirandized.

    b. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

    c. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

    d. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

22. The officer whose patrol car I was in then took me to Memorial Hospital in Savannah, Georgia, where I had x-rays of my shoulders, back, and knees. I was not informed of the results of those X-rays. During the approximately 4hrs at the hospital, I experienced a great deal of pain in my back, shoulders, and knees.

    a. 8th Amendment violation: cruel and unusual punishment.

    b. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

    c. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

    d. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

23. Once we left the hospital, I was transported to the Savannah detention center in Georgia, where it was then I was finally informed of my alleged offenses. They processed me, photographed me, fingerprinted me, and placed in a jail cell without being brought before a magistrate or a judge. My personal property was stolen from me without due process of the law.

    a. 4th amendment violation (secure in my persons and effects, unreasonable search and seizure), 5th amendment violation (due process), 6th amendment violation (was not informed of the nature and cause of the action), 8th amendment violation (excessive bail, unusual punishment), 13th amendment violation (involuntary servitude), 14th amendment violation (no state shall deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.) The officer also violated Rule % of the Federal Rules of Criminal Procedure (Initial Appearance) when I was not immediately brought before a magistrate and made aware of the nature and cause of the actions being brought against me. I was never provided a sworn complaint/ Affidavit of Facts, or a signed bench warrant for a misdemeanor that was not a disturbance/ breach of the peace to warrant a misdemeanor arrest under the common law.

    b. Whereas, the officers failed to bring me before a Judge or Magistrate (swiftly) and failed to ensure I retained my due process, to know the nature and the cause of the alleged charges. Black's Law Dictionary (13th addition) depicts this infringement as Arbitrary detention, "The detention of a

      person without due process of law; the indefinite or unreasonable delayed holding of a suspect or defendant without bringing the person before a competent court, esp. in a case involving terrorism or illegal immigration. – Also termed detention without charge; detention without trial."

  c. Furthermore, the case law regarding *Cook v. Hastings,* 150 Mich. 289, 114N.W. 71, 72 (1907) states "The law governing this case is elementary. Except for a breach of the peace committed in his presence, or when he has a reasonable ground to believe that the person arrested is a felon or is about to commit a felony, a police officer has no authority to arrest without a warrant."

  d. Plaintiff reasserts items 11 (a) through (i) pursuant to the right to travel freely upon the highway.

  e. Whereas, Plaintiff reasserts items 12 (a) through (e) regarding the lack of "Due Process of Law."

  f. Plaintiff reasserts items 13 (a) through (h) by not informing Plaintiff regarding the nature and the cause of said conduct initiated by the Defendants is arbitrary to the well-established "Good Law" principles.

### V. COUNT ONE – VIOLATION OF MY FOURTH AMENDMENT RIGHT (The Right to be Secure in their Persons, Houses, Papers, and Effects)

24. The first cause of action is a violation of my 4th Amendment Right (entered my private vehicle without a signed Warrant from a Judge) "...probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." Again, my person, papers, and effects (at this point) were violated, and my 4th amendment was trampled upon.

25. Whereas, (pursuant) to the Georgia Constitution regarding Life, liberty, and property, states: "No person shall be deprived of life, liberty, or property except by due process of law" (Georgia Const., Art., 1, Sec. 1, Para. I).

26. Furthermore, (pursuant) to the Georgia Constitution regarding the protection of persons and property, and the equal protection of the laws, states: "Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws" (Georgia Const., Art., 1, Sec. 1, Para. II).

27. The authority to arrest without a warrant was rather limited and well defined in common law, which is a law that has been made part of our constitutional law in the due process provisions. The common law rule on arrests is based on experience and common sense. Moreover, as a general rule of common law, an arrest could not be made without a warrant. Thus the right to arrest a person without a warrant is an exception to the general rule. This simple rule was expressed by Justice Carpenter, in delivering an opinion for the Supreme Court of Michigan, as follows:

28. "The law governing this case is elementary. Except for a breach of the peace committed in his presence, or when he has a reasonable ground to believe that the person arrested is a felon or is about to commit a felony, a police officer has no authority to arrest without a warrant" (*Cook v. Hastings,* 150 Mich. 289, 114 N.W. 71, 72 (907)).

29. Conversely, by the due process clause, the common law governs what the law on arrest is in this land, and where it exists most statutes can be (is) declaratory of the common law. If there is no direct language in the constitution directing what procedure or process is to be followed, the common law is to be the due process of law followed, not a legislative statute or city ordinance. Officers who do not abide by this law are trespassers and are guilty of false imprisonment.

### VI. COUNT TWO – VIOLATION OF MY FIFTH AMENDMENT RIGHT (The Right to Due Process)

30. The second cause of action is (a violation) of my 5th Amendment Right by not informing me of the alleged crime, thus subverting my due process rights. I was Arbitrarily detained (false imprisonment and unlaw unrest) without being allowed to be brought before a Magistrate swiftly and failed to ensure I retained my due process.

31. Whereas, (pursuant) to the Georgia Constitution regarding Life, liberty, and property, states: "No person shall be deprived of life, liberty, or property except by due process of law" (Georgia Const., Art., 1, Sec. 1, Para. I).

32. Furthermore, (pursuant) to the Georgia Constitution regarding the protection of persons and property, and the equal protection of the laws, states: "Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws" (Georgia Const., Art., 1, Sec. 1, Para. II).

33. History teaches that deprivation of liberty is more often arbitrary and unlawful than (it is) otherwise. At least this is always the tendency of those who hold executive power. Daniel Webster once stated this problem In these words:

34. "The contest for ages has been to rescue liberty from the grasp of the executive power."

35. Likewise, one can argue that no one is safe to leave their home or travel about for fear of being subject to thousands of unknown laws in which one could be instantly arrested for transgressing. One law review writer states the problem as follows:

36. "People no longer live their whole lives in the village in which they were born. They pass freely from place to place, and in transit go through innumerable towns and villages. The risk of being arrested on sight, because one's conduct contravenes some regulation which the wisdom of the local Solons deems necessary, is appalling to any thinking person. It would be impossible to know at what moment one might become amenable to arrest" (*University of Pennsylvania Law Review,* vol. 75, p. 491, April 1927).

37. To this end, a revolution in England and the revolution of the American colonies are said by high authorities to have been largely influenced by promiscuous seizures and searches of persons and property. The history of our ancestors over the centuries teaches that a people cannot be free where the executive power can arbitrarily arrest or imprison citizens, or ransack at will the properties of the people. The executive power is limited and guided by the 'Law of the land,' or 'due process of law.' If it was a restriction upon the King of England, it must be so for every petty officer today.

38. Likewise, in many (of) the treatises on the law (pertaining to) the rights of citizens, and in many of the older and better court cases, we find the declaration: "The law is very jealous of the liberty of the citizen." What law is it that so regards liberty? It is the Common Law, and it declares that: "one who interferes with another's liberty does so at his peril" (*Knight v. Baker,* 117 Ore. 492, 2444 Pac. 543, 544 (1926)). This law also prescribes how arrests are to be made, and the restrictions involved.

39. Similarly, false imprisonment consists of any type of unlawful restraint or interference with the personal liberty of an individual. It involves any unlawful violation of the liberty of another. The ancient English legal scholar, Henry de Bracton (1200-1268) tells us that false imprisonment is one of the oldest violations of rights known:

40. "Forcefully to deprive a man of freedom to go wheresoever he may is clearly a trespass. False imprisonment was indeed one of the first trespasses recognized by the Common Law" (*Street's Foundation of Legal Liability,* vol. 1, p.12, citing: *Bacton's Note Book,* vol. II, p. 314 (1229), pl. 465).

41. Even so, false imprisonment is classified as a tort under the common law, and, is also as a crime (*Kroeger v. Passmore,* 36 Mont. 504, 93 Pac. 805, 807 (1908), It has been labeled as a tort, a trespass, an assault, a wrong, a damage, and an injury, giving one cause to bring suit against another for a remedy. Depriving a person of their liberty is legally no different than depriving a person of their property - a theft of liberty is (a) wrong by which remedy can be had, just as is the case with the theft of property.

42. Whereas, false imprisonment is a great offense due to the high regard the law has for liberty. In Chitty's Practice of the Law, it states:

43. "The infraction of personal liberty has ever been regarded as one of the greatest injuries. The injuries to liberty are principally termed "false imprisonment:., or malicious prosecutions." (Joesph Chitty, Esq., *The Practice of the Law,* vol. I, Chap. II, p. 47, London, 1837).

44. Similarly, unlawful detention or deprivation of liberty is the basis of an action for the tort of false imprisonment. Actual seizure or the laying on of hands is not necessary to constitute an unlawful detention (*Hanser v. Bieber,* 271 Mo. 326, 197 S.W. 68, 70 (1917)). Thus the only essential elements of the action are: (1) Detention or restraint against one's will; and (2) The unlawfulness of such detention or restraint (*Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W. 2d 86, 93 (1952); S*inclair Refining Co. v. Meek,* 62 Ga.App. 850, 10 S.E. 2d 76, 79 (1940); *Southern Ry. Co. in Kentucky v. Shirley,* 121 Ky. 863, 90 S.w. 597, 599 (1906)).

45. In his Treatise on the Law of Torts, Judge Cooley states:

46. "False imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing, by force or threats, an unlawful restraint upon a man 's freedom of locomotion" (Thomas Cooley, *Treatise on the Law of Torts,* vol.1, 4th Ed. § 109, p.345; *Meints v. Huntington,* 276 F. 245, 248 (1921)).

47. Blackstone, in his Commentaries on the Law, (3 Bl. Comm. 127) states on this matter:

48. "Every confinement of the person is an imprisonment, whether it be in a common prison, or in a private house, or in the stocks, or even by forcibly detaining one in the public streets" (Cited by: *Fox v. McCumin,* 205 Iowa 752, 218 N.W. 499, 501 (1928); *Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 93 (1952)).

49. Thus, any type of detainment or confinement of a person, or restriction or deprivation of their liberty or freedom of locomotion, where he is compelled to remain where he does not wish to remain or to go where he does not wish to go, is an "imprisonment." The only question thereafter is whether or not the imprisonment is "false." The word "false" comes from the common law and is synonymous with "unlawful." A false arrest is one means of committing false imprisonment.

50. Therefore, in describing false imprisonment as being the unlawful restraint of the liberty of the citizen, or, of the primary right of freedom of locomotion, the Supreme Court of Idaho also stated:

51. "Imprisonment is any restraint of the personal liberty of another; and prevention of his movements from place to place, or his free action according to his own pleasure and will: it is false imprisonment when this is done without lawful authority" (*Grifin v. Clark,* 55 Idaho 364, 42 P.(2d) 291, 301 (1935); citing, *Cordell v. Standard Oil Co.,* 131 Kan. 221, 289 P. 472, 473 (1930); *Johnson v. Tompkins,* 13 Fed. Cas. 840, 853, No. 7,416 (1833)).

52. In reviewing several "text-book" definitions on false imprisonment, the Supreme Court of North Carolina stated:

53. "False imprisonment is the unlawful and total restraint of the liberty of the person. The imprisonment is false in the sense of being unlawful. The right violated by this tort is 'freedom of locomotion.' It belongs historically to the class of rights known as simple or primary rights.••• The theory of law is that one interferes with the freedom of locomotion of another at his own peril" (*Riley v. Stone,* 174 N.C. 588, 94 S.S. 434, 440 (1917)).

54. Likewise, a rather complete description of what does and does not constitute false imprisonment was given by the Supreme Coun of Kansas as follows:

   > "False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone or by acts alone, or by both, and by merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be confined within a prison or within walls, or that he be assaulted or even touched. It is not necessary that there should be any injury done to the individual's person or to his character or reputation; nor is it necessary that the wrongful act be committed with malice or ill will, or even with the slightest wrongful intention; nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and bywords or acts which he fears to disregard" (*Garniul v. Squires,* 62 Kan. 321, 62Pac. lOO5, 1006 (1900); *Kroegerv. Passmore,* 36Mont. 504, 93 Pac. 805,807 (1908)).

55. Whereas, false imprisonment exists not only by words or acts that one fears to disregard but also by such acts and measures that he cannot disregard. No fear of disobedience needs to exist. If someone causes a situation that makes it impossible for another to exercise their liberty or locomotion, it is a false imprisonment.

56. Moreover, false imprisonment is the name of the category for those torts that unlawfully deprive or interfere with the liberty of a person. Under this category, the unlawful arrest is the most common type of wrong committed. Another common way (in which) a wrong of this nature occurs is by the unlawful detention of a person in a room, jail, or other location. Definitions of false imprisonment usually come from unlawful restraints of this nature:

57. "False imprisonment has been well defined to be a trespass committed by one man against the person of another, by unlawfully arresting him and detaining him without any legal authority" (*Riegd v. Hygrade Seed Co.,* 47 Fed. Supp.290, 294 (1942)).

58. Whereas, the law sets such a high value upon the liberty of the citizen, that even an attempt to unlawfully arrest is esteemed a great provocation (*Giddens v. State,* 154 Ga. 54, 113 S.E. 386, 388 (1922)). All the authorities agree that an arrest may be made either with or without any physical force or actual touching by the officer (*McAleer v. Good,* 216 Pa. 473, 65 Atl. 934, 935 (1907)). Thus any illegal restraint of one's (personal) liberty by the act of another, gives that person a cause of action for false imprisonment against the one causing the illegal restraint. Prima facie any restraint put by fear or force is unlawful.

59. Therefore, false imprisonment is necessarily a wrongful interference with the personal liberty of an individual usually made by an arrest, and physical custody or restraint is not essential to the effectuation of an arrest. So if an officer tells a person that he is under arrest, and he thereupon submits himself to the officer, going with him and obeying his orders, such a person is deprived of his liberty, and if the (act of the officer) is unlawful, it is false imprisonment. In all cases in which there is no physical touching or seizure, nor any resistance, the (intentions of the parties) to the transaction are to be considered. In such a case there must have been intent on the part of one of them to arrest or restrain the other, and intent on the part of such

other to submit, under the belief and impression that submission was necessary (*Johnson v. Norfolk & W. Ry. Co.,* 82 W.Va. 692, 97 S.E. 189, 191 (1918)).

60. The following definitions will provide further insight into the nature and elements of false imprisonment:

61. "False imprisonment is the unlawful restraint by one person of the physical liberty of another, and as here used the word "false" seems to be synonymous with unlawful" (*Mahan v. Adams,* 144 Md. 355, 124 A. 901, 904 (1924)).

62. "Any exercise of force, or expressed or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or go where he does not wish to go, is an imprisonment" (*Black v Clark's Greensboro, Inc.,* 263 N.C. 226, 139 S.E.2d 199, 201 (1964)).

63. "False imprisonment is the unlawful arrest or detention of a person, without a warrant, or by an illegal warrant, or a warrant illegally executed" (*Noce v. Ritchie,* 155 S.E. 127, 128 (W.Va. 1930).

64. "Any restraint, however slight, upon another's liberty to come and go as he pleases, constitutes an arrest" (*Turney v. Rhodes,* 42 Ga.App. 104, 155 S.E. 112 (1930)).

65. Some may argue that there is a specific length of time requirement; however, the tort or wrong of false imprisonment occurs (the instance that) one is restrained in (the exercise) of their liberty. Therefore, there is no unreasonable length of time for a restraint before the tort can be claimed:

66. "False imprisonment at common law and elsewhere consists in the unlawful detention of the person of another for any time, whereby he is deprived of his personal liberty" (*Sinclair Refining Co. v. Meek,* 62 Ga.App. 850, 10 S.E. 76, 79 (1940), citing: 3 Bl. Com. 127; 12Amer. & Eng. Ency. of Law, 721; 19 Cyc. 319).

67. Therefore, even when police officers stop a moving vehicle for a brief detention, it is sufficient to constitute an arrest (5 American Jurisprudence, 2d, "Arrest,"§ 1, p. 696). When one is told to stay in their car by an officer, though it is for only ten seconds, it is an arrest. Time duration is not a factor in making an arrest:

68. "False imprisonment is defined as an act which, directly or indirectly, is a legal cause of confinement of another within boundaries fixed by the actor for any time, no matter how short in duration, makes the actor liable to the other" (*Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 92 (1952)).

## VII. COUNT THREE – VIOLATION OF MY SIXTH AMENDMENT RIGHT (The Right to be Informed of the Nature and the Cause of the Accusation)

69. The third cause of action is a violation of my 6th Amendment Right (I was not informed of the nature and cause of the action). Conversely, violating my right to travel within my private property (having to provide a driver's license).

70. Whereas, pursuant to case law such as Kizee v. Conway and the Supreme Court of Virginia where taxi drivers reapplied for permits/ licenses "for-hire," EGGLESTON, J., delivered the opinion of the court:

71. In Taylor v. Smith, 140 Va. 217, 234, 124 S.E. 259, we said:

72. "The right to use the streets of a city as a common carrier for hire is a privilege and not an inherent right, and may be granted or refused by the city, in the exercise of its police powers, at its pleasure. This principle we reaffirmed in *Long's Baggage Transfer Co. v. Burford,* 144 Va. 339, 344, 132 S.E. 355. See also, Ex

*parte Dickey,* 76 W. Va. 576, 85 S.E. 781, 782, L. R. A 1915F, 840; 37 Am. Jur., Motor Transportation, see 22, p. 535.

73. Therefore, one for hire (if approved by the city) must have a permit and a license to exercise one's privilege.

74. Conversely, the right to travel is inherently separate when it comes to having a permit/ license for hire, which indeed, the former is a right for all:

75. *Ex parte Dickey,* supra (85. S.E., at page 782):

> "distinguishes the radical difference between the right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, and that of one who makes the highway his place of business and uses it for private gain in the operation of a motor vehicle. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but, as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all authorities."

76. Furthermore, "This reasoning and distinction we recognized and approved in *Taylor v. Smith,* supra (140 Va., at pages 236, 237); *Long's Baggage Transfer Co. v. Burford,* supra (144 Va., at pages 344, 345); *Thompson v. Smith,* 155 Va. 367, 377, 154 S.E. 579, 71 A. L. R. 604.

77. Moreover, the opinion of the court given by EGGLESTON, J., goes on to state:

78. "And as we have already seen, the latter principle applies to the issuance of licenses by a municipality for the right to operate a for-hire vehicle over its streets" (*Ex parte Dickey,* supra; *Taylor v. Smith,* supra; *Long's Baggage Transfer Co. v. Buford,* supra).

### VIII.    COUNT FOUR – VIOLATION OF MY EIGHT AMENDMENT RIGHT (The Right to Excessive Bail, Unusual Punishment)

79. The fourth count of action violates my 8th Amendment Right (excessive bail, unusual punishment).

80. Whereas, (pursuant) to the Georgia Constitution, Bail, fines, punishment, arrest, and the abuse of prisoners states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted; nor shall any person be abused in being arrested, while under arrest, or in prison" (Georgia Const., Art., 1, Sec. 1, Para. XVII).

81. See the Affidavit of Truth certified by the Clerk of the Court of Chatham County State Court on the 1st day of October 2024 and filed for record.

### VIIII.    COUNT FIVE – VIOLATION OF MY THIRTEENTH AMENDMENT RIGHT (The Right against Involuntary Servitude)

82. The fifth count of action violates my 13th Amendment Right (involuntary servitude).

83. Whereas, (pursuant) to the Georgia Constitution, Involuntary Servitude states: "There shall be no involuntary servitude within the State of Georgia except as a punishment for a crime after legal conviction…" (Georgia Const., Art., 1, Sec. 1, Para. XXII).

84. See the Affidavit of Truth certified by the Clerk of the Court of Chatham County State Court on the 1st day of October 2024 and filed for record.

### X. COUNT SIX – VIOLATION OF MY FOURTEENTH AMENDMENT RIGHT (No Person can be Deprived of Life, Liberty, or Property without Due Process of Law, nor Deny any Person within its Jurisdiction the Equal Protection of the Laws)

85. The sixth count of action violates my 14th Amendment Right violation (no state shall deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws).

86. Whereas, (pursuant) to the Georgia Constitution regarding Life, liberty, and property, states: "No person shall be deprived of life, liberty, or property except by due process of law" (Georgia Const., Art., 1, Sec. 1, Para. I).

87. Furthermore, (pursuant) to the Georgia Constitution regarding the protection of persons and property, and the equal protection of the laws, states: "Protection to person and property is the paramount duty of government and shall be impartial and complete. No person shall be denied the equal protection of the laws" (Georgia Const., Art., 1, Sec. 1, Para. II).

88. See the Affidavit of Truth certified by the Clerk of the Court of Chatham County State Court on the 1st day of October 2024 and filed for record.

### XI. COUNT EIGHT – FALSE IMPRISONMENT

89. Plaintiff re-alleges paragraphs 1 through 23.

90. On February 25th, 2024, the Defendants, without a warrant or due process of law (Georgia Const., Art., 1, Sec. 1, Para. I, Para. XIII.), unlawfully arrested the Plaintiff, and acting contrary to law, (did) falsely imprisoned the Plaintiff, depriving him of his liberty (Georgia Const., Art., 1, Sec. 1, Para. I-II). However, the Defendants would argue that the arresting officer had probable cause for the arrest, and, furthermore, the arrest did not require a warrant under the Fourth Amendment right, but only those arrests made with warrants.

91. Likewise, the Plaintiffs false imprisonment (that followed the false arrest) came from the lack of due process, (pursuant) to the alleged lawful actions nullified the imprisonment and arrest unlawful.

92. Therefore, the due process argument in false imprisonment cases will nullify the statutes, rules, and ordinances (that are) contrary to the common law rule on arrest. No legislative act can abrogate what is the law of the land, Otherwise, there is no such thing as due process. The Defendants have encroached upon the Plaintiffs' liberty by ignoring due process.

93. Similarly, The common law allowed arrests without warrants only for known felonies and breaches of the peace. This is a required condition under "due process of law" (to) arrest someone. Thus it has been said that:
    > "Arrest without warrant, where a warrant is required, is not due process of law; and arbitrary or despotic power no man possesses under our system of government (*Muscln v. Commonwealth*, 86 Va. 443, 10 S.E. 534, 536 (1890)).

94. Whereas, It should be quite obvious that if the legislature can say that arrests can be made without warrants for all misdemeanors committed in the presence of an officer, it can say that such arrests can be

made when the misdemeanor is not in the presence of the officer. It also could say that such warrantless arrests can be made for mere suspicion, or because someone might break a law. All would be subject to summary arrests without question or warrant.

95. Moreover, the term "due process of law" had a well-settled meaning when the Constitution was adopted. The framers thereof intended to perpetuate and secure the many principles, laws, and rights, all of which could not be listed, against abrogation. Subsequent legislation cannot change the meaning or effect of this constitutional provision, and thus cannot change the procedure by which one is to be deprived of his liberty by way of arrest. An arrest cannot be done except by the law of the land, or due process of law (*Muscln v. Commonwealth*, 86 Va. 443, 10 S.E. 534, 536 (1890)).

96. Plaintiff re-alleges paragraphs 1 through 23, and 95 through 100.

97. Upon arresting Plaintiff, Defendant brought him to the Savannah Detention Center for (the purpose) of booking and detaining him, and, by his (own) admission, (did not attempt) to bring Plaintiff before a Judge or Court as is required by due process.

98. The acts of Defendant in deciding how to deal with Plaintiff after his arrest, and failing to take him to a Judge or Court (to) so decide, constitute false imprisonment by Defendant under the law of the land (Georgia Const. Art. I, Sect., I, Para.).

### XII.   COUNT TEN – ASSAULT and BATTERY

99. Plaintiff re-alleges paragraphs 1 through 23 and 95 through 100.

100. Due to the unlawful acts of Defendant, Plaintiff suffered a series of assaults and batteries upon person, including arrest, handcuffing, imprisonment, physically searched, forced fingerprinting and booking procedures, and harassment.

### XIII.   COUNT ELEVEN – VIOLATION of TITLE 42 U.S.C. 1983 (Civil Action for Deprivation of Rights)

101. Title 42 U.S.C. 1983 (Civil action for deprivation of rights) - "provides an individual the right to sue State Government and others acting "Under color of law" for civil rights violations."

102. Defendants CORY MICHAEL BARELLA, MICHAEL LANIER, GAVIN S. BALLARD, and NATHANIEL BRINSON, (clearly) violated my "due process" civil rights by subverting my rights, depicted in paragraphs 1 through 23 and 95 through 100 while acting under the color of law.

103. Under Title 42 U.S.C. 1983, I am allowed to sue "others" for such violations.

### XIV.   COUNT TWELVE – GENERAL and SPECIAL DAMAGES and PRAYER for RELIEF

104. Plaintiff re-alleges and hereby incorporates (all) of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

105. The foregoing acts thereof of Defendants CORY MICHAEL BARELLA, MICHAEL LANIER, GAVIN S. BALLARD, and NATHANIEL BRINSON for the Pooler Police Department in Georgia State, were the natural cause of Plaintiff's injuries, and, the damages which include, but are not limited to present and future general damages (in excess) of $2,250,000,000 (Two Billion, Two Hundred and Fifty Million US Dollars) payable

in Federal Reserve Notes, for direct costs and fees related to the value pursuant of my rights which the Defendants violated and overreached their Juristidticion, thus causing mental, emotional, physical, and psychological harm the Plaintiff has suffered. Moreover, Plaintiff requests Fifteen Thousand Dollars in Federal Reserve Notes for the out-of-pocket expenses and time spent addressing this issue to stand upon Justice and said rights.

106. The foregoing acts thereof of Defendants GAVIN S. BALLARD, and NATHANIEL BRINSON for the Pooler Police Department in Georgia State, were the natural cause of Plaintiff's injuries, and damages which include, but not limited to present and future special damages (in excess) (Two Hundred and Fifty Million US Dollars) payable in Federal Reserve Notes for the direct violation of my 14th Amendment due process rights, protected by the Constitution.

107. Plaintiff demands the removal of unlawful imprisonment and all unlawful Statutes (repugnant to the United States of America's Constitution) from the Plaintiffs' record. Furthermore, the Plaintiff also demands the removal of unlawful imprisonment and all unlawful Statutes (repugnant to the United States of America's Constitution) from the County's records. Failing to do so will result in the Plaintiff obtaining (any) all respectable work to make a respectable living while denying the Plaintiff the ability to assist his community (to make) a better future for all with (continuance damage) to the Plaintiff's reputation.

### XV.   SUMMARY

108. NOW, THEREFORE, (in accordance) with the pertinent legal provisions and in the interest of justice, the Plaintiff respectfully requests this Honorable Court issue an Order for the award of monetary damages against Defendants, CORY MICHAEL BARELLA, MICHAEL LANIER, GAVIN S. BALLARD, and NATHANIEL BRINSON for the Pooler Police Department in Georgia State. The Plaintiff further seeks any additional and appropriate relief this Court, in its wisdom, may consider just and equitable given the circumstances at hand.

### XVI.   DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of any, and all issues properly triable by jury in this action.

This __3rd__ day of __June__, 2025

Respectfully Submitted,

_____ Pro se UCC 1-308 Without Prejudice

By: Rafael Garza IV

578 Channing Drive

Richmond Hill, Georgia (31324)

rafael.garza.rg79@gmail.com

(808)-348-8640

### CERTIFICATE OF SERVICE

I hereby certify that on __3rd__ day of __June__, 2025, a copy of the foregoing was sent to the Clerk of this Court as is required by Pro Se litigants via Physical delivery. The Mailing address is as follows: United States District Court, Southern District of Georgia, c/o Court Clerk 8 Southern Oaks Ct. Savannah, Georgia 31405.